IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| ROZELL AND LINDA HODGES,<br>MELVIN AND BARBARA JACKSON,<br>SHUNDRA SANDERS a/k/a SHUNDRA<br>SANDERS BANKS, | PLAINTIFFS, |
| VS. | CIVIL ACTION NO. 4:05CV168-P-A |
| COLDWELL BANKER REAL ESTATE<br>CORPORATION; COLDWELL BANKER<br>FIRST GREENWOOD–LEFLORE REALTY<br>INC.; LEFLORE PROPERTIES, INC.; JIM<br>PRUETT; LINDA PRUETT; BANK OF<br>COMMERCE; STATE BANK & TRUST<br>COMPANY; AND BAYROCK MORTGAGE<br>CORPORATION, | DEFENDANTS. |

## AMENDED ORDER

These matters come before the court upon Defendant State Bank & Trust Co.'s Motion to Compel Arbitration of the claims of Plaintiff Melvin Jackson [134-1], State Bank & Trust Co.'s Motion to Compel Arbitration of all of the Plaintiffs' claims against all Defendants [145-1] and Defendants Bank of Commerce and Terry Green's joinder in the latter [153-1]. After due consideration of the motions and the responses filed thereto, the court finds as follows, to-wit:

Under the Federal Arbitration Act, written agreements to arbitrate controversies arising out of an existing contract " shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The Supreme Court has consistently held that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S.

468, 476 (1989); *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). The Fifth Circuit Court of Appeals has also consistently favored arbitration. "The FAA expresses a strong national policy in favoring arbitration of disputes, and all doubts should concerning arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002).

In any event, a person is bound by the contents of a contract he signs, whether he reads it or not. *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 262-63 (5th Cir. 2004) (even an illiterate person is charged with reading a contract); *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 455 (Miss. 2004) ("It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it."); *Massey v. Tingle*, 867 So.2d 235, 240 (Miss. 2004) ("[I]n Mississippi, a person is charged with knowing the contents of any document that he executes."); *Stephens v. Equitable Life Assur. Society of the U.S.*, 850 So.2d 78, 83-84 (Miss. 2003); *Turner v. Terry*, 799 So.2d 25, 36 (Miss. 2001) ("[P]arties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence.").

With regard to State Bank's motion to compel arbitration of Plaintiff Melvin Jackson's claims against State Bank, the court finds the motion well-taken. Though the plaintiff initially disputed that the Melvin Jackson who signed the subject arbitration agreement with State Bank was not the Melvin Jackson who is the plaintiff in this action since the name of the wife was different, this plaintiff has not disputed State Bank's response that the social security number written on Jackson's loan application matches that written on the subject arbitration agreement. Thus, the claims of Melvin Jackson against State Bank in this case should be dismissed without prejudice and compelled to binding arbitration subject to the agreement Jackson signed. This is appropriate given

that all of Plaintiff Melvin Jackson's claims in this action are covered by the arbitration agreement. "The weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir. 1992). "Any post-arbitration remedies sought by the parties will not entail renewed consideration and adjudication of the merits of the controversy but would be circumscribed to a judicial review of the arbitrator's award in the limited manner prescribed by ... 9 U.S.C. §§ 9-12." *Id.*

State Bank also moves to compel arbitration of all of the plaintiffs' claims against not only State Bank but also all other defendants based on the arbitration agreement signed by each plaintiff with Bayrock Mortgage Corporation pursuant to the equitable estoppel doctrine enunciated in *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524 (5th Cir. 2000).

It is undisputed that the plaintiffs each signed arbitration agreements with Bayrock Mortgage Corporation. Accordingly, upon motion by Bayrock, the court on September 27, 2005 dismissed all of the plaintiffs' claims against Bayrock without prejudice and compelled those claims to binding arbitration.

The Fifth Circuit Court of Appeals in *Grigson* adopted the following Eleventh Circuit test contained in *MS Dealer Services Corp. v. Franklin*, 177 F.3d 942 (11th Cir. 1999):

> Existing case law demonstrates that equitable estoppel allows a nonsignatory to compel arbitration in two different circumstances.
>
> First, equitable estoppel applies when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory. When each of a signatory's claims against a nonsignatory makes reference to or presumes the existence of the written agreement, the signatory's claims arise out of and relate directly to the written agreement, and arbitration is appropriate.

3

> Second, application of equitable estoppel is warranted when the signatory to the contract containing an arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract. Otherwise the arbitration proceedings between the two signatories would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted.

*Grigson*, 210 F.3d at 527 (citing with approval *Franklin*, 177 F.3d at 947) (reformatted for clarity).

Each of the plaintiffs signed arbitration agreements. Each of the agreements were also signed by an agent of Bayrock. Though the agreements appear to have been stand-alone agreements – as opposed to an arbitration clause contained within the subject loan agreements – the arbitration agreements clearly reference the loan agreements. The first sentence of each arbitration agreement states: "In consideration of Lender's extension, and other good and valuable consideration, the receipt and sufficiency of which is acknowledged by both parties, it is *further agreed* as follows: ...." (emphasis added). Therefore, the arbitration agreements are part of the subject loan agreements.

Perhaps more significant with regard to the instant motion, the arbitration agreements contain the following provision:

> In the event of *any Claim subject to this Agreement*, both You and We agree to arbitrate claims ("third party claims") *by or against any other person* or entity, such as investors, brokers, appraisers, sellers, closing agents, and real estate agents, *connected in any way with the Credit Transaction*, If [sic] such other person or entity agrees, either before or after notification of the third party claim, to submit such third party claim to binding arbitration in accordance with the terms of the Agreement.

(emphasis added). This broadly drafted provision clearly indicates that Bayrock and the plaintiffs agreed that any claim "connected in any way" to the loan is subject to arbitration not only with regard to Bayrock and the plaintiffs, but also regarding any other person or entity who wants to use the arbitration agreement if it is connected in any way to the loan. Thus it would seem that any defendant in this action would have the benefit of this arbitration agreement pursuant to this provision.

4

Nevertheless, pursuant to *Grigson* the first test for equitable estoppel to allow the nonsignatory defendants to benefit from Bayrock's arbitration agreement with the plaintiffs requires that the plaintiff signatories rely on the contents of the written agreement in asserting their claims against the nonsignatory defendants. As the court has already pointed out, though the plaintiffs' claims are not based in and of themselves on the arbitration agreements, these agreements constituted part of the loan transaction between Bayrock and the plaintiff. Thus the first question is whether the plaintiffs as signatories to the arbitration agreements are relying on the related loan agreements in advancing their claims.

The second, alternative test for equitable estoppel requires that the plaintiff signatories raise "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

Having considered the parties' arguments, the court concludes that the very nature of the plaintiffs' RICO claims against all defendants in this matter allows either of the tests for equitable estoppel doctrine discussed in *Grigson* to apply in this case.

Any RICO claim necessitates (1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise. *Crowe v. Henry*, 43 F.3d 198, 204 (5th Cir. 1995). An "enterprise" can be "any individual, partnership, corporation, association, or other legal entity and a union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "A pattern of racketeering activity requires two or more predicate acts and a demonstration that the racketeering predicates are related and amount to or pose a threat of continued criminal activity." *St. Paul Mercury Ins. Co. v. Williams*, 224 F.3d 425 (5th Cir. 2000).

The plaintiffs assert that all of the defendants, the signatory and nonsignatories to the

arbitration agreement/loan agreement between Bayrock and the plaintiffs, are liable for participating in an enterprise of racketeering activity. For example, paragraph 1 of the Amended Complaint states: "Each Defendant named above, as is set forth in the paragraphs that follow, has violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1962, *et seq*. (RICO)." Paragraph 2 states: "In particular, each Defendant named above has participated in a pattern of 'racketeering activity' by each committing two or more violations of Federal criminal statutes, including statutes relating to mail fraud and wire fraud." Paragraph 3 states: "These Defendants each were members of a group of persons, who invested in and/or maintained an interest in, and/or participated in an 'enterprise,' which was engaged in and/or which affected interstate commerce."

The plaintiffs' RICO claims against all defendants include reference to and the existence of the loan/arbitration agreements entered into between the plaintiffs and their lender Bayrock Mortgage. Furthermore, the RICO claims constitute "allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract."

Accordingly, the court concludes that State Bank's motion to compel arbitration of all of the plaintiffs' claims against State Bank based on the arbitration agreements with Bayrock Mortgage Corporation should be granted pursuant to *Grigson*. However, although State Bank moves to compel arbitration against all defendants on the same basis, State Bank does not have standing to move for the other defendants and only Bank of Commerce and Terry Green have filed a joinder in State Bank's instant motion. Until the other defendants do so, the court has no basis to apply this ruling to any defendants other than State Bank, Bank of Commerce, and Terry Green.

The court is aware that a great deal of work has transpired in this litigation up to this point. The court observes, however, that State Bank's motion to compel, filed on September 2006, was not fully briefed until March 12, 2007.

Since all of the plaintiffs' claims against State Bank should be compelled to arbitration, they should be dismissed from this action without prejudice pursuant to *Alford*, 975 F.2d at 1164.

**IT IS THEREFORE ORDERED AND ADJUDGED** that:

(1) Defendant State Bank & Trust Co.'s Motion to Compel Arbitration of the claims of Plaintiff Melvin Jackson [134-1] is **GRANTED**; therefore,

(2) All of Plaintiff Melvin Jacksons' claims against State Bank are **DISMISSED WITHOUT PREJUDICE** and are **COMPELLED TO BINDING ARBITRATION**; and

(3) Defendant State Bank & Trust Co.'s Motion to Compel Arbitration of all of the Plaintiffs' claims against State Bank [145-1] and Bank of Commerce and Terry Green's joinder therein [153-1] are **GRANTED**; therefore,

(4) All of the plaintiffs' claims against State Bank & Trust Co., Bank of Commerce and Terry Green are **DISMISSED WITHOUT PREJUDICE** and are **COMPELLED TO BINDING ARBITRATION**; and

(5) All of the plaintiffs' claims against the other Defendants remain.

**SO ORDERED** this the 26th day of March, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE