IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

| | |
|---|---|
| ROZELL AND LINDA HODGES,<br>MELVIN AND BARBARA JACKSON,<br>SHUNDRA SANDERS a/k/a SHUNDRA<br>SANDERS BANKS, | PLAINTIFFS, |
| VS. | CIVIL ACTION NO. 4:05CV168-P-A |
| COLDWELL BANKER REAL ESTATE<br>CORPORATION; COLDWELL BANKER<br>FIRST GREENWOOD–LEFLORE REALTY<br>INC.; LEFLORE PROPERTIES, INC.; JIM<br>PRUETT; LINDA PRUETT; BANK OF<br>COMMERCE; STATE BANK & TRUST<br>COMPANY; AND BAYROCK MORTGAGE<br>CORPORATION, | DEFENDANTS. |

**ORDER**

These matters come before the court upon Plaintiffs' Motion for Reconsideration [233] and Amended Motion for Reconsideration [237] of this court's March 22, 2007 Order compelling arbitration. After due consideration of the motion for reconsideration and the responses filed thereto, the court finds as follows, to-wit:

The plaintiffs argue that the Mississippi Supreme Court's recent decision in *Rogers-Dabbs Chevrolet–Hummer, Inc. v. Blakeney*, 950 So.2d 170 (Miss. February 22, 2007), entered after the plaintiffs responded to State Bank's motion to compel arbitration, is a intervening change of law justifying this court to vacate its Order compelling arbitration of the plaintiffs' claims against State Bank.

In *Blakeney*, the plaintiff entered an arbitration agreement with a dealership in connection with the purchase of a Humvee. This agreement was very broad in its terms, covering "all claims,

1

demands, disputes, or controversies" arising from the sale of the vehicle. The plaintiff levied claims of breach of warranty, invasion of privacy, negligent hiring and supervision, civil fraud, and intentional infliction of emotional distress, alleging that he never received the title to the SUV, the vehicle had various mechanical malfunctions, and that one or more dealership employees stole his identity and used his title to forge fraudulent titles for stolen vehicles. The trial court granted the dealership's motion to compel arbitration regarding the breach of warranty claim, but excepted the other claims, including the claim for civil fraud.

The Supreme Court in *Blakeney* affirmed the trial court's decision, concluding that the plaintiff's civil fraud claim fell outside the scope of the arbitration agreement. In this regard, the court wrote:

> [T]oday's case does not involve fraud in the inducement of the arbitration agreement; therefore, the arbitration agreement is valid and enforceable. Blakeney's claim of fraud in the underlying suit is civil fraud outside the scope of the arbitration agreement. Our holding in today's case, in effect, upholds the arbitration agreement as a valid agreement, but determines that Blakeney's claims are outside the scope of the arbitration agreement.

*Blakeney*, 950 So.2d at 178, n. 9. The Court cautioned that: "By no means are we invalidating the arbitration agreement on the account of Blakeney asserting fraud; we are excluding from arbitration the claims which Blakeney asserts are outside the scope of this particular arbitration agreement; thus, failing to meet the first prong [of the arbitrability test requiring that the dispute fall within the scope of the agreement]." 178, n. 9.

In its own words, the Court in *Blakeney* did not consider its ruling a change in arbitration law, writing: "[W]e are of the firm opinion that today's decision in no way undermines what is now a long line of cases from this Court undergirding the federal policy favoring arbitration." *Id*. at 178.

2

Given the powerful federal policy favoring arbitration, as routinely expressed by the U.S. Supreme Court and the Fifth Circuit Court of Appeals, and given the *Blakeney* Court's admonition that they were not invalidating the arbitration agreement merely because the plaintiff asserted a claim of civil fraud (not fraud in the inducement), this court concludes that the decision in *Blakeney* was confined to its facts and cannot be used to invalidate the arbitration agreement in this case.

The scope of the arbitration agreement in this case is extremely broad, especially with regard to the claims asserted by the plaintiffs in this case:

> Any claim, dispute or controversy between Customer and bank, including Bank's employees, officers, directors, successors, assigns, other affiliated entities or persons (collectively, "Covered Persons"), (whether in contract, tort, or otherwise, whether pre-existing, present or future, and including statutory, common law, intentional tort or equitable claims), arising from or relating to any matter, including but not limited to , the Deposit Account, any past or future interactions, business or dealings between the parties or between Customer and the Covered Persons or any application, advertisements, promotions, or oral or written statements related to the Deposit Account, any goods or services furnished in connection with the Deposit Account, any goods or services furnished in connection with the Deposit Account or the relationships with respect to the Deposit Account (including to the full extent permitted by applicable law, relationships and dealings with third parties who are not signatories to the Deposit Account or this Agreemnt) or the validity, enforceability or scope of this Agreement (collectively, "Claim"), shall be resolved, upon the unilateral or joint election of Customer or Bank or said Covered Persons, respectively, by binding arbitration ....

As discussed in its original Order, under the Federal Arbitration Act, written agreements to arbitrate controversies arising out of an existing contract "shall be valid, irrevocable and enforceable." 9 U.S.C. § 2. The Supreme Court has consistently held that "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Volt Information Sciences, Inc. v. Board of Trustees of the Leland Stanford Junior University*, 489 U.S. 468, 476 (1989); *Moses H. Cone Mem. Hosp. v.*

*Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In any event, a person is bound by the contents of a contract he signs, whether he reads it or not. *Washington Mutual Finance Group, LLC v. Bailey*, 364 F.3d 260, 262-63 (5th Cir. 2004) (even an illiterate person is charged with reading a contract); *McKenzie Check Advance of Mississippi, LLC v. Hardy*, 866 So.2d 446, 455 (Miss. 2004) ("It is well settled under Mississippi law that a contracting party is under a legal obligation to read a contract before signing it."); *Massey v. Tingle*, 867 So.2d 235, 240 (Miss. 2004) ("[I]n Mississippi, a person is charged with knowing the contents of any document that he executes."); *Stephens v. Equitable Life Assur. Society of the U.S.*, 850 So.2d 78, 83-84 (Miss. 2003); *Turner v. Terry*, 799 So.2d 25, 36 (Miss. 2001) ("[P]arties to an arms-length transaction are charged with a duty to read what they sign; failure to do so constitutes negligence.").

"In adjudicating a motion to compel arbitration under the [FAA], courts generally conduct a two-step inquiry. The court must first determine whether the parties agreed to arbitrate the dispute. This determination involves two considerations: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. The court then must determine if any legal constraints foreclose arbitration of those claims." *Brown v. Pacific Life Ins. Co.*, 462 F.3d 384, 397 (5th Cir. 2006) (internal citations omitted).

Regarding the first prong, it is undisputed that the agreement is valid and the plaintiffs do not allege fraud in the inducement. In opening the subject bank accounts, the plaintiffs were handed stand-alone arbitration agreements which they had the opportunity to read and which they decided to sign.

As to the second prong, the dispute in this case that State Bank & Trust participated in a RICO enterprise along with the other defendants by "bankrolling" the scheme is covered by the

4

extremely broad scope of the arbitration agreement as quoted above. The nature of the fraud asserted in *Blakeney* is distinguishable from that asserted in this case. In *Blakeney*, the Court concluded that it was beyond reason that the plaintiff in that case would contemplate that signing an arbitration agreement in connection with purchasing a vehicle would cover the dealership stealing his identity using his title to perpetrate criminal activities after the sale. In this case, however, the asserted fraudulent activity of State Bank and the other defendants is reasonably related to the arbitration agreements since they were signed in connection with opening bank accounts – all in furtherance of the plaintiffs' desire to get a mortgage loan to purchase a house.

In any event, given the extremely broad language of the arbitration agreement in this case , the plaintiffs' claims against State Bank clearly fall within the scope of the agreement.

"The FAA expresses a strong national policy in favoring arbitration of disputes, and all doubts concerning arbitrability of claims should be resolved in favor of arbitration." *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002). This court doubts that *Blakeney* can be used to prevent the plaintiffs' claims against State Bank from going to arbitration given the *Blakeney* decision, by its own terms, confined itself to the particular arbitration agreement with regard to the particular facts involved and given the Court's insistence that "[b]y no means are we invalidating the arbitration agreement on the account of Blakeney asserting fraud."

**IT IS THEREFORE ORDERED AND ADJUDGED** that Plaintiffs' Motion for Reconsideration [243] and Amended Motion for Reconsideration [248] are **DENIED**.

**SO ORDERED** this the 20th day of July, A.D., 2007.

/s/ W. Allen Pepper, Jr.
W. ALLEN PEPPER, JR.
UNITED STATES DISTRICT JUDGE